### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **V.** | * | **Cr. No. JKB-16-363** |
| **KENNETH FAISON** | * | |
| **Defendant** | * | |
| **For: KENNETH FAISON** | * | |

### MEMORANDUM IN SUPPORT OF DEFENDANT FAISON'S MOTION IN *LIMINE* UNDER FED. R. EV. 402 AND 403 TO PRECLUDE ADMISSION INTO EVIDENCE OF DEFENDANT'S GUILTY PLEAS IN STATE COURT IN 2015 IN THE GOVERNMENT'S CASE-IN-CHIEF

Kenneth Faison, defendant, by his undersigned counsel, hereby files this memorandum in support of his motion for Honorable Court to exclude from evidence introduction of his guilty pleas in State court from 2015 and states:

### INTRODUCTION

This matter comes before the Court for a pretrial evidentiary ruling.   In January, 2015, the defendant pled guilty in State court to the same offenses with which he is charged in the above-captioned indictment.   In order for those State guilty pleas to be admissible in this case, those pleas must meet Constitutional muster; they must have been made "knowing and voluntary" in compliance with the the requirements of the United States Constitution.   Without a full understanding of the consequences of the pleas, the pleas could not be made knowingly.

Here, this defendant was unquestionably not told that his State pleas could be used to convict him (again) in federal court on racketeering and related charges.   His decision to

plead guilty to the State charges lacked the necessary, and critical, information to support an intelligent, informed choice.   His pleas were therefore neither knowing nor voluntary.

The harm to this defendant from the improperly obtained guilty pleas is the use of those pleas against him at a trial before this Court.   This Court can readily eliminate this prejudice to the defendant.   Vacating the State convictions is neither necessary nor requested.   As provided by Fed. R. Ev. 402, the unconstitutional nature of the pleas can be remedied by excluding those pleas from the Government's case-in-chief.[1]   Rule 402 states that "relevant evidence is admissible unless" the United States Constitution "provides otherwise."   Thus, under the evidence rules, evidence obtain in violation of a defendant's Constitutional rights is not admissible.

The requested ruling is quite straightforward: if a defendant is not advised, prior to pleading guilty in State court, that his pleas can be used to convict him of committing the same acts in federal court, *without the defendant committing any new offenses*, the federal Government cannot use those State pleas in its case-in-chief.

The Government remains free to prove up the offenses as it sees fit.   It simply cannot use the defendant's improperly advised guilty pleas against him.

## FACTS

The facts relevant to this motion are not disputed.   On January 12, 2015, the defendant pled guilty in the Circuit Court for Baltimore City (Case No. 11331024) to criminal gang activity ("State count 2") and two additional counts of assault with a

---

[1]   This motion does not address the use of the State guilty pleas in cross-examination under Fed. R. Ev. 609 or 613 should the defendant choose to testify.   Similarly, this motion does not address the use of the State convictions at a possible sentencing in this matter.   Cf.   *United States v. Custis*, 988 F.2d 1355 (4th Cir. 1993).

handgun ("State counts 3 and 5").[2]   A copy of the State indictment is attached hereto as

Exhibit A.   Under State count 2, Mr. Faison pled guilty to being a member of the Black

Guerrilla Family (BGF).   Mr. Faison in charged in the federal indictment with

racketeering for the same activity - being a member of BGF.   Further, all of the offenses

in the State indictment that form the underlying crimes for the State offense of criminal

gang activity also form the basis for the present federal racketeering indictment:

| (Count 2) State Indictment paragraph: | (Count 1) Federal Indictment paragraph: |
|---|---|
| 35 (Possession of cocaine on 10/2/07) | 28 |
| 50 (Armed robbery of J.P. on 1/7/10) | 33 |
| 51 (Armed robbery of D.S. on 1/7/10) | 34 |
| 52 (home invasion robbery on 1/7/10) | 35 |
| 80 (drug possession on 10/31/12) | 43 |
| 83 (weapon possession on 12/19/12) | 47 |

The federal indictment charges the same gang activity and underlying offenses as

those included in the defendant's State guilty pleas.   Count one of the federal

racketeering indictment also includes, at paragraphs 33 and 34, the same acts alleged in

the State indictment in counts three and five to which Mr. Faison also pled guilty in State

court (first degree assault on J.P and on D.S., respectively).

---

[2]    State count 2 charged, under Maryland Criminal Code Article, sec. 9-804(a) and (b),
which provide: '(a) Prohibited acts. -- A person may not: (1) participate in a criminal gang
knowing that the members of the gang engage in a pattern of criminal gang activity; and
(2) knowingly and willfully direct or participate in an underlying crime, or act by a
juvenile that would be an underlying crime if committed by an adult, committed for the
benefit of, at the direction of, or in association with a criminal gang.
(b) Commission of underlying crime resulting in death of victim. -- A person may not
violate subsection (a) of this section that results in the death of a victim.
    BGF fits the definition of a "criminal gang"under Maryland Criminal Code, sec.
9-801(c): "Criminal gang" means a group or association of three or more persons whose
members: (1) individually or collectively engage in a pattern of criminal gang activity; (2)
have as one of their primary objectives or activities the commission of one or more
underlying crimes, … and (3) have in common an overt or covert organizational or
command structure.

Mr. Faison was represented by an Assistant State Public Defender in State court.
Counsel did not, at any time prior to the entry of the guilty pleas, advise Mr. Faison that
his State guilty pleas would create far more serious liability for him in federal court.
See Affidavit of Kenneth Faison, attached hereto as Exhibit B, at paras. 8 and 9.   Neither
the judge nor defense counsel advised this defendant about the consequences that his
guilty pleas in State court would have in a federal prosecution.   A copy of the State court
guilty plea proceeding is attached hereto as Exhibit C.[3]   Mr. Faison was not told,
although it was obvious to any competent defense attorney in 2015, that pleading guilty
in State court to being a member of BGF would readily lead to a conviction in federal
court for the same offense, this time labeled as 'racketeering.'   Had the defendant been
advised of the consequences of his pleas, he would not have pled guilty.   Exh. B at paras.
10 and 11.   Exhibit C, at pages 31-37, also confirms that the facts of the State case are
included in the instant indictment.

Further, a comparison of both indictments establishes that all of Mr. Faison's federal
co-defendants were charged in his State case.   Exh. A at pp. 1-2 and ECF 40. p.1.

## ARGUMENT

I.   <u>United States Constitutional Requirements of a Valid Guilty Plea</u>

A valid guilty plea must be made knowingly and voluntarily.   The critical
evidentiary import of a guilty plea cannot be understated: "That a guilty plea is a grave
and solemn act to be accepted only with care and discernment has long been recognized."
*Brady v. United States*, 397 U.S. 742, 748 (1970).   The high importance of guaranteeing
that a guilty plea is properly given obtains because a "plea of guilty is more than a

---

[3]   The State guilty plea proceeding is unusually long not because of the amount of
information provided to the defendant, but because he pled guilty with a co-defendant in
what the State allows as a dual proceeding.

confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), citing *Kercheval v. United States*, 274 U.S. 220, 223 (1927).   As a result of the vital, and conclusive, nature of guilty pleas, "out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily…"   *Kercheval* at 223.

Voluntariness is not an optional requirement or a gloss of the guilty plea procedure. Rather, it is "constitutionally required… that a defendant's guilty plea is truly voluntary." *McCarthy v. United States*, 394 U.S. 459, 465 (1965).   "Made voluntarily" means made "after proper advice and with full understanding of the consequences" of the plea. *Kercheval*, at 223.   And, because the voluntary and knowing nature of a plea of guilty is critical to its Constitutional viability, "the court will vacate a plea of guilty shown to have been unfairly obtained through ignorance…"   *Id.* at 224.   The facts underlying the plea are not determinative, nor is a defendant's actual guilt or innocence - it is the process that creates a valid and usable guilty plea; evaluation of the legitimacy of at guilty plea "does not involve any question of guilt or innocence."   *Id.*

The concept of voluntariness arises in a variety of situations in criminal cases. Voluntariness, however, has a particular and specific meaning in relation to guilty pleas due to the circumstances in which a defendant finds himself in court, *i.e.,* a formal criminal indictment.   "What is at stake for an accused facing death or imprisonment demands the utmost solicitude .. to make sure [the defendant] has a full understanding of what the plea connotes and of its consequences."   *Boykin*, at 243-44.   Thus, in addition

to insuring that a defendant is aware of the charges to which he is pleading, for a guilty plea to be knowing and voluntary, more is required.

A valid guilty plea includes two separate types of waivers from a defendant. "Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so—hence the minimum requirement that his plea be the voluntary expression of his own choice." *Brady*, at 748. However, "the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge." *Id*. As a result, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Id*. The "test for determining the validity of guilty pleas … was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

Mr. Faison's guilty pleas could not have been made "after proper advice," *Kercheval*, because he was never told of the risks his pleas created for him in federal court (and that the risk existed even without Mr. Faison committing any additional crimes). And his pleas could not have been with "a full understanding of the consequences" of his plea for the same reason. Similarly, without being informed of the risk of a federal racketeering prosecution as part of the guilty plea decision calculus, Mr. Faison could not have made

an intelligent choice "among the alternative courses of action" open to him.; he did not know the effect of the the sole course of action presented to him in his plea agreement.

## II.   A Guilty Plea That is Not Knowing and Intelligent is Obtained in Violation of the Constitution

Any knowing, intelligent guilty plea would have to include consideration of the subsequent federal charges.   And, more importantly, that the State guilty pleas were a powerful, and conclusive, weapon in the hands of the federal Government who need do no more than admit the pleas in court to subject this defendant to twenty years to life, consecutive, without parole.

Valid pleas require valid advice.   A federal racketeering charge was a likely consequence and a relevant circumstance for the defendant to consider.   A likely consequence because a guilty plea to State gang charges is a guilty plea to federal racketeering charges.   And it would be relevant to the defendant's decision: it is difficult to imagine that the fact that State pleas could easily result not only in a federal charge that carries 20 years to life without parole, but also inevitably to a conviction of same, would not be relevant to a State defendant.   Without this information, his State guilty pleas could not be either knowing or voluntary.

The Constitutional validity of a guilty plea determines its usefulness in court.   A guilty plea obtained in violation of a defendant's due process rights is "void;" it cannot be used for any purpose, much less to convict the defendant of more serious charges in federal court: "consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefor void." *McCarthy*, at 466.

Because Mr. Faison's State guilty pleas do not pass Constitutional muster, they are inadmissible in this court under a straightforward application of Rule 402.   This Court is respectfully moved to exclude them from the Government's case-in-chief.

### III.   Application of *Strickland* to Guilty Pleas

Guilty pleas obtained after insufficient advice are also analyzed under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).   Under this alternate analysis, Mr. Faison's State counsel's advice failures fall below the minimum requirements of S*trickland* and, again, are determined to have been involuntarily made: "[i]f counsel was ineffective, it follows that [appellant]'s pleas were involuntary."   *Hammond v. United States*, 528 F.2d 15, 18 (4th Cir. 1975).

The strictures of *Strickland* apply to guilty plea proceedings as well as trials: "We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."   *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).   The right to effective assistance of counsel "extends to the plea-bargaining process."   *Missouri v. Frye*, 132 S.Ct. 1399, 1405 (2012) and *see also Padilla v. Kentucky*, 130 S.Ct. 1473, 1476 (2010).   As a result, during plea negotiations defendants are "entitled to the effective assistance of competent counsel."   *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012), quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970). Thus, the fact that the defendant pled guilty instead of going to trial did not deprive him of his Sixth Amendment right to be advised properly by his counsel.

"Under *Strickland*, we must first determine whether counsel's representation 'fell below and objective standard of reasonableness.'"   *Padilla*, at 1482, quoting *Strickland*, at 688 (the "performance prong").   The second *Strickland* prong addresses whether

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Strickland*, at 694 (the "prejudice prong").   Mr. Faison meets both prongs.[4]

A.   Performance Prong

As to the performance prong, "[t]he proper measure of attorney performance remains simple reasonableness under prevailing professional norms."   *Padilla* at 1482, quoting *Strickland* at 688.   Obviously, the "prevailing professional norms" with regard to guilty pleas, is to comply with Supreme Court law.   The Constitution requires that all guilty pleas be made "knowing and voluntary," *McCarthy*, at 466.   To meet this requirement, defense counsel must provide sufficient advice to his or her client to ensure that the plea comports with the Supreme Court's dictates.   Sufficient, Constitutionally valid, advice includes providing the defendant "with a full understanding of the consequences of the plea."   *Kercheval*, at 223.

*Padilla* provides the guidelines for establishing that Faison's State counsel did not meet the Sixth Amendment requirement of *Strickland*'s performance prong.   *Padilla* involved a State guilty plea to transportation of marijuana.   As a result of his plea, Padilla was subject to deportation.   The Court addressed "the critical obligation of counsel to advise the client of 'the advantages and disadvantages of a plea agreement.'"   *Padilla* at 1484, quoting *Libretti v. United States*, 516 U.S. 29, 50-51(1995).   Padilla's

---

[4]   As discussed below, the prejudice prong does not technically apply here because Mr. Faison does not seek to vacate his State convictions.   In any event, a "presumption of prejudice" applies when, as here, improper advice leads a defendant to forgo a judicial proceeding who which he had a Constitutional right.   *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000).

counsel, however, did not advise his client of the potential deportation consequences of his plea.[5]

The Court held that even though deportation was not an automatic result of the plea, counsel violated the performance prong of *Strickland* by failing to advise his client of the "penalty that may be imposed on non-citizen defendants who plead guilty to specific crimes." *Id.,* at 1481 (emphasis added).   In addition, the Court rejected the idea that because deportation was not part of Padilla's criminal sentence, it was merely "collateral" to the proceedings and, therefore did not need to be addressed by defense counsel:"we, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' under *Strickland*." *Id*., at 1481.   Thus, even though the "severe penalty" of deportation was not a part of the defendant's sentence in State court, it was "intimately related to the criminal process" and therefore it is "most difficult to divorce the penalty from the conviction in the deportation context." *Id*.

In addition, the Court found that whether Padilla's counsel actually knew of the deportation consequences to the plea (Cf., see fn. 5, above) was irrelevant.   The Court found that the applicable immigration statute, 8 U.S.C. sec. 1227 (a)(2)(B)(i), was "succinct, clear and explicit in defining that removal consequences for Padilla's conviction." *Id.* at 1483.   The Court then held that "Padilla's counsel could have easily

---

[5]   Actually, his counsel misadvised Padilla and told him that he "did not have to worry about deportation."   *Id*. at 1478.   The Court held that the existence of incorrect advice was irrelevant.   "A holding limited to affirmative misadvice would invite two absurd results."   *Id*. at 1484.   The issue was not the wrong advice, but the failure to give the proper advice about the immigration consequences so that Padilla could make an informed decision."   The Court confirmed this approach in *Jae Lee v. United States*, No. 16-327 (June 23, 2017), in which the Court held that a guilty plea obtained when counsel incorrectly told the defendant that he would not be deported was nevertheless invalid. *Jae Lee* is discussed in detail, *supra*, at pp. 17-19.

determined that his plea would make him <u>eligible</u> for deportation simply from reading the text of the statute." *Id*.  (emphasis added).   The Court was careful to point out that when "the [immigration] law is not succinct and straightforward" a defense attorney need only advise his or her client "that pending criminal charges <u>may cause a risk</u> of adverse immigration consequences." *Id*.  (emphasis added).   But, when the "consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." *Id*.

   B.   <u>Performance Prong - *Padilla* Applied</u>

Applying *Padilla* to the instant case establishes that Mr. Faison's counsel's lack of advice failed to meet even the minimum requirements of *Strickland*'s performance prong. Preliminarily, like the immigration law in *Padilla*, the federal racketeering statutes, 18 U.S.C. secs. 1961-1963, are "succinct, clear and explicit" in defining federal racketeering. In fact, the federal statute is extraordinarily similar to the the Maryland gang statute to which Mr. Faison pled guilty.

18 U.S.C. secs. 1962 (c) and (d) prohibit both conspiracy by any person employed by any enterprise engaged in "the conduct of such enterprise's affairs through a pattern of racketeering activity."   The Maryland statute prohibits participation in a "criminal gang", which is defined as engaging in "a pattern of criminal gang activity."   Md. Crim. Law Art. Sec. 9-801(c)(ii).   Federal law defines "racketeering activity" as "any act or threat involving murder, kidnapping, arson, robbery, … , extortion, .. .dealing in controlled substances … which is chargeable under State law and punishable by imprisonment for more than one year."   Similarly, Maryland statutes define a "pattern of criminal gang

activity" as committing or conspiracy to commit murder, kidnapping, arson, robbery extortion and "distribution of CDS."    See Md., Crim. Art. Sec. 9-801(f).[6]

Thus, anyone with a rudimentary understanding of State law on gang activity (assuming State defense counsel had at least this knowledge) also has, or "easily" could have had, *Padilla*, an understanding of the federal racketeering statute.    To understand one is the understand the other; they are the same in relevant part.    The "succinct, clear and explicit" requirement of *Padilla* is met here.

*Padilla* held that a non-criminal consequence such as deportation, a severe penalty to be sure, was a sufficiently related result of the State guilty plea that it had to be included in the advice from Padilla's defense counsel.    The guilty plea was to be used subsequently by immigration officials to begin deportation proceedings.

The consequences of Mr. Faison's State pleas, *i.e.* the federal racketeering charges, are even more directly related to his guilty pleas than the immigration consequences in *Padilla*.    First, Faison's negative consequences remain in the criminal context.    As critical consequence as deportation is ("Deportation is an integral part- indeed, sometimes the most important part - of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes."    *Padilla* at 1480), twenty years to life in a federal penitentiary without parole is a more severe penalty.The need for proper advice regarding the potential racketeering charges, and the conclusive nature of the State guilty pleas in any such federal case, is therefore more important than in the deportation context considered in *Padilla*.

---

[6]    The individual State offenses are found at Md. Crim. Art. Secs. 14-101(a)(7), (3), (2), (9) and 9-801(f)(3), respectively.

Further, *Padilla* did not limit its holding to only "automatic" consequences, nor to deportation.   The Court held that counsel's advice was required to include that deportation "may be imposed."   *Padilla* at 1481.   Deportation was not an automatic result for Padilla; a federal racketeering indictment was not an automatic result for Mr. Faison either.   *Padilla* held that deportation was a likely consequence and, if it occurred, it would depend directly on the criminal conviction.   Similarly, a federal RICO charge, and subsequent conviction, was a likely consequence of the defendant's State guilty pleas.

As a result, the *Padilla* Court required defense counsel, in order for the plea to be "knowing and voluntary" to at least advise his client of the potential consequences because those consequences were so severe.   "The severity of deportation … only underscores how critical it is for counsel to inform her non-citizen client that he faces a risk of deportation."   *Id*. at 1486. (emphasis added).   Therefore, for defense counsel to satisfy the Constitutional "responsibility, we now hold that counsel must inform her client whether his plea comes with a risk of deportation."   *Id*.   (emphasis added).

Counsel's advice is not limited to what will happen from the plea, but also what the risks the plea entails.   Such a holding is fully consistent Supreme Court law as outlined in *Brady*, *Kercheval* and *McCarthy.*   For a guilty plea to be Constitutionally valid, it must be made knowing a voluntarily - it must be made by a defendant with "sufficient awareness of the relevant circumstances and likely consequences."   *Brady*, at 748. Likely consequences, not only automatic ones.

Like deportation, federal racketeering charges were a likely consequence and relevant to Mr. Faison's decision whether to plead guilty to State gang and related

charges; those exact charges now confront him in federal court.   A federal racketeering indictment that would conclusively rely on the State guilty pleas and result in a consecutive sentence of up to twenty years to life without parole is an obvious risk for this defendant.   A State guilty plea to being a BGF member as part of "criminal gang activity" simultaneously provides the federal Government with all it needs for a racketeering conviction.   It is simply beyond cavil that such a risk was not "relevant' to the decision to plead guilty in State court.   Under *Padilla*, he should have been advised of this potentiality and counsel's failure to do so renders the pleas constitutionally invalid.

Although *Padilla* does not require that defendant's specific counsel actually know the potential consequences of the plea, lest there be any doubt of the relationship between being a BGF member and federal racketeering charges, it was obvious and known in 2015 (and before) that this United States Attorney's Office prosecuted BGF members for racketeering.   The news media been replete with reports of BGF members being prosecuted for racketeering in federal court.   And, at the very time that Mr. Faison was pleading guilty to being a BGF member on January 12, 2015, other alleged BGF members were on trial in this very court on racketeering charges.   Case No. ELH-13-151 was tried from November, 2014 to February, 2015.   This trial was reported by various media outlets, including WBAL-TV.   Exhibit D, attached hereto, is an article on WBAL's website from November 20, 2014, reporting that start of the trial.   The article connects BGF with the federal indictment; the headline reads "Feds: Jailhouse corruption gave power to BGF gang; opening statements begin for last of the 44 defendants."

The indictment itself was announced and reported eighteen months earlier - see Exh. E hereto, an article from the *Washington Post* from April 23, 2013.   The *Post* article

14

references "federal prosecutors" and that the allegations were that prison "guards helped leaders of the Black Guerilla Family run their criminal enterprise."

The 2013 indictment was far from the only federal prosecution of BGF members for racketeering.   In January, 2011, the *City Paper* reported yet another RICO prosecution of alleged BGF member Todd Duncan.   See Exh. F, attached hereto.   Indeed, the federal prosecutions of BGF members for racketeering was so substantial that in April, 2013, WYPR published a time line of the prosecutions entitled "Recent Black Guerilla Family federal indictments".   See Exh. G, attached hereto.   This time line includes additional prosecutions in 2009 and 2010.   Although *Padilla* does not require actual proof of defense counsel's knowledge of federal prosecutions of BGF members, it would be an affirmative challenge for any criminal defense attorney in Baltimore in 2015 to be unaware of the potential for such prosecutions.

Regardless, it is, after all, what the defendant is told or not told that matters.   Mr. Faison was not told about the relevant and likely consequences of his plea regarding a subsequent federal racketeering prosecution.   Under *Padilla*, he should have been.   His pleas were not knowing and voluntary and therefore are not constitutionally valid.   As a result of his State counsel's failure to comply with the performance prong of *Strickland*, his pleas cannot be admitted in a trial in this Court.

IV.  Like Involuntary Confessions, Involuntary Guilty Pleas are Not Admissible

Nearly all cases that deal with involuntary guilty pleas look only at the question of whether the plea should be vacated; in almost every case the defendant is seeking to overturn his conviction.   Thus, these cases offer little guidance in the instant case where no such request is being made and only the admissibility of the guilty pleas is at issue.

The closest analogy to the use of involuntary guilty pleas is the case law surrounding the admissibility of involuntary confessions.   Although many confessions are held to be involuntary due to law enforcement misbehavior, the law related to the inadmissibility of involuntary confessions applies with equal force to involuntary guilty pleas; both involve Constitutional standards that must be met before a defendant's own words can be used against him in court.

   In content, a guilty plea is a confession - the defendant "confesses" to a crime.   The primary difference is that the plea is under oath and concludes the criminal matter while a confession actually has <u>less</u> impact on the ultimate verdict.   Nevertheless, a guilty plea is identical factually to a confession: a guilty plea is the defendant's "admission in open court that he committed the acts charged in the indictment."   *McMann v. Richardson*, 397 U.S. 773 (1970).   A confession, by definition, constitutes the same admission: that a defendant committed certain criminal acts.   Admissibility of a guilty plea, however, should require higher scrutiny than a confession because a "plea of guilty is more that a confession which admits that the accused did various acts; it is itself a conviction." *Boykin* at 242.

   The Supreme Court itself has equated the assessments of valid confessions with that of valid guilty pleas.   In *Boykin*, the Court addressed the validity of a guilty plea made with no record made by the court regarding the defendant's waiver of his rights.   Absent other applicable references, the Court looked to confession law to assess the issue: "Admissibility of a confession must be based on a 'reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant.'" *Boykin* at 242, quoting *Jackson v. Denno*, 378 U.S. 368, 387 (1964).   Admissibility of a guilty plea,

which in effect is a more formal confession, is similarly dependent on a finding of voluntariness: "it is constitutionally required … that a defendant's guilty plea is truly voluntary."   *McCarthy*, at 465.

An involuntary confession cannot be admitted into evidence; logic demands the same restriction for involuntary guilty pleas.   The law on admissibility of involuntary confessions is clear: "It is now axiomatic that a defendant in a criminal case is deprived of due process if his conviction is founded, in whole or in part, upon an involuntary confession…"   *Jackson,* at 376.[7]   As a result, convictions "following the admission into evidence of confessions which are involuntary … cannot stand."   *Rogers v. Richmond*, 365 U.S. 534, 540 (1961).

In sum, the same criteria, and language, is used in determining admissibility of guilty pleas as of confessions.   Admission of an involuntary confession violates a defendant's Due Process rights.   *Jackson*, at 376.   A guilty plea that is "not equally knowing an voluntary" has "been obtained in violation of due process and is therefore void." *McCarthy*, at 466.   A conviction that is based on an involuntary confession "cannot stand", *Jackson*, *id*, and neither can a conviction that is based on an involuntary guilty plea that is "void."   *McCarthy*, at 466.

V.   Prejudice: Proof Not Needed But Established Anyway

Traditionally, an attempt to have a conviction overturned requires meeting *Strickland*'s second prong, the prejudice prong.   This standard usually requires a court to

---

[7]   In addition, determination of admissibility of confessions, or guilty pleas, must be made by the Court: "Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the used of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness."   *Jackson*, at 376-377.   18 U.S.C. § 3501(a) also requires the Court to address, pretrial, the voluntariness of any statements attributed to the defendant.

determine whether "there is a reasonable probability that, bur for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, at 694.   In the instant case, however, the defendant is not seeking to have his State convictions vacated and, therefore, *Strickland*'s prejudice prong does not come into play.   The instant motion seeks evidentiary exclusion; a prejudice finding is not necessary for such a ruling.   Rather, under Fed. R. Ev. 402, if the defendant's guilty pleas were obtained in violation of the United States Constitution, the pleas are not admissible in federal court.

### A.   Invalid Guilty Pleas - Prejudice Presumed

If, however, the Court believes that prejudice must be shown in Mr. Faison's case, the defendant can meet that requirement as well.   To begin, the prejudice analysis is different when counsel is claimed to be ineffective at a guilty plea than when a trial error is alleged.   In the latter case, after a trial, the court applies a "'strong presumption of reliability' to judicial proceedings and require a defendant to overcome that presumption."   *Roe* at 482, quoting *Smith v. Robbins*, 528 U.S. 259, 286 (2000).   Thus, in such cases, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Roe*, at 482.   A difficult, often logically impossible, hurdle to meet. (Surmounting *Strickland*'s high bar is never an easy task."   *Padilla* at 371.)

The standard in guilty plea matters is starkly different because "in this case counsel's 'deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself.'"   *Jae Lee v. United States*, 582 U.S. ___ (2017), Slip Op. at p. 5.   Instead of the "trial error" standard, "[w]hen a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he

gone to trial, the result of that trial 'would have been different' than the result of the plea bargain."   *Id.*   Such a question is inapplicable in guilty plea cases "because, while we ordinarily 'apply a strong presumption of reliability to judicial proceedings,' 'we cannot accord' any such presumption 'to judicial proceedings that never took place.'"   *Id.* at p. 6, quoting *Roe*, at 482-483.

Instead, the Court established a presumption of prejudice when counsel's ineffective assistance led to a defendant's denial of the judicial proceeding *in toto*: "The even more serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, similarly demands a presumption of prejudice."   *Roe*, at 483.   As a result, the standard is "whether the defendant was prejudiced by the 'denial of the entire judicial proceeding . . . to which he had a right.'   *Jae Lee* at p. 6, quoting *Roe*, at 483.   Thus, " when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   *Jae Lee, id*, quoting *Hill v. Lockhart*, 474 U.S., at 59.

B.   Actual Prejudice Shown in the Instant Case

In the first instance, the defendant's affidavit, at paras. 10 and 11, establishes that had Mr. Faison been advised of the RICO consequences of his plea, he would not have pled guilty in State court:   "I would not have pled guilty in State court to a five year jail sentence with parole if I had been told that by doing so I would face up to twenty years in federal prison without parole for the same activities."   This statement alone meets the requirement that there was a reasonable probability that he would not have pleaded guilty if he had proper counseling.   Mr. Faison's statement, coupled with the presumption of prejudice provided in *Roe*, establishes the prejudice prong of *Strickland* in guilty plea cases.

And Mr. Faison's position is reasonable under the circumstances.    A defendant in State court, who had already been in jail for over two years, would readily take a plea offer to a five year sentence where he could be released well prior to end of five years, particularly having already served two of the five.    The same defendant would take a quite different approach to waiving all of his Constitutional and trial rights if by doing so he exposed himself to up to 20 years to life in federal prison with no possibility of parole. And that such a sentence would arise <u>without</u> Mr. Faison committing any further crime or doing anything else but plead guilty in State court.    The assertion that he would have made a different decision is reasonably probable under *Strickland*'s second prong.[8]

Because the prejudice identified in *Jae Lee* and *Roe* arises from the absence of at trial - the failure of counsel to advise the defendant properly leading directly to an uninformed waiver of his trial rights - the defendant does not have to show that he would have been acquitted had he gone to trial.    As the Court stated in *Jae Lee*:

> The Court confronted precisely this kind of error in *Hill*. See *id.*, at 60 ("the claimed error of counsel is erroneous advice as to eligibility for parole"). Rather than asking how a hypothetical trial would have played out absent the error, the Court considered whether there was an adequate showing that the defendant, properly advised, would have opted to go to trial.

*Id*, Slip Op. At 6.    In fact, in *Jae Lee*, the Government argued, directly contrary to *Hill*, that because "Lee had no viable defense at trial, he would almost certainly have lost and found himself still subject to deportation…"    *Jae Lee*, Slip Op. At 7    As a result, the Government

---

[8]    *Padilla* did not address the prejudice issue.    In *Padilla*, the Supreme Court of Kentucky had denied Padilla's post conviction claim without a hearing because the court believed deportation was only a "collateral matter."    *Padilla*, at 1478-79.    The United States Supreme Court reversed the State court for the reasons stated above, "concluding that Padilla has sufficiently alleged that his counsel was constitutionally deficient."    *Id*. at 1487.    The Court then stated "[w]hether Padilla is entitled to relief will depend on whether he can demonstrate prejudice as a result" of his deficient counsel, an issue on which the Court did not opine because it was not addressed by the lower court.    *Id*.

claimed that Lee "cannot show prejudice from accepting a plea where his only hope at trial was that unexpected and unpredictable might occur that would lead to an acquittal."   *Id*., at 8.

The Court rejected the Government's position.   "[T]the Government overlooks that the inquiry we prescribed in *Hill* v. *Lockhart* focuses on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial."   *Id*.   Indeed, particularly relevant here, the Court stated that "common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea." *Id*, at 9.   And "here we are instead asking what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking."   *Id*., at 9-10.

Thus, beyond simply the expected outcome at trial, the "decision to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea."   In Mr. Faison's case, the decision could not be made in any competent manner without knowledge of the "consequence" that a guilty plea in State could could, *without more*, lead to a racketeering conviction in federal court.[9]   More importantly, the difference between a conviction via a jury trial and one from the defendant's own admissions is crucial here: a jury verdict is inadmissible hearsay to establish that the defendant actually committed the federal crimes charged.   His guilty pleas, by stark contrast, not only could be admitted against him they are conclusive.   The defendant's statement that he would have made a different choice had he known the actual consequences is not only "reasonably probable" but extremely likely.

Mr. Faison's statement that he would not have plead guilty State court had he been informed of the effects that his pleas would have in federal court, however, is not the only

---

[9]   The importance of advising a defendant of the potential jail term is so great that it is mandatory under Fed. R. Crim. Proc. 11(b)(1)(H) that a judge so advise a defendant before a guilty plea can be accepted.

aspect of prejudice in this matter.   "There are situation in which the overriding focus on fundamental fairness may affect the [prejudice] analysis."   *Williams v. Taylor*, 529 U.S. 362, 391 (2000).   Fundamental fairness dictates that when a defendant is not told of the extreme effect that his State plea could have in a subsequent federal case, those pleas should not thereafter be used against him.   This Court can readily eliminate any harm to Mr. Faison from his ill-advised guilty pleas by simply excluding those pleas from the Government's case-in-chief in this case.

VI.   Mr. Faison Has Not Committed Any New or Subsequent Offenses

One common complaint from federal defendants who have pled guilty in State court is that they now face a greater sentence from their commission of a new offense due to the State convictions.   The claim, which has been universally rejected, is that had the defendant known at the time of the State plea that when he committed a new federal offense he would face a greater sentence, he would not have pled guilty in State court. That argument is not the argument made here by Mr. Faison; Mr. Faison has not committed any new or subsequent federal offense.   He is facing trial before this Court for the same acts for which he pled guilty in 2015.

The contention in other matters that a defendant is somehow required to be advised of the enhanced sentence he would face in a subsequent criminal proceeding was addressed concisely by the Seventh Circuit in *United States v. Reeves*, 695 F.3d 637 (7th Cir. 2012).   The court rejected that a defendant was required to be advised of "the possibility of an enhanced sentence for future criminal conduct."   *Id*., at 640.   The Court found, properly, that "[a]ny risk at the time Reeves pleaded guilty in state court in

2004 *was entirely contingent on his deciding to commit more crimes in the future*."   *Id*.

(emphasis added).   The Court then addressed the absurdity of such an argument:

> We pause for a moment to consider the absurd ramifications of the rule that
> Reeves asks us to create.   Using *Padilla* as a springboard, we would be
> forced to hole that counsel has a constitutional duty to advise the client as to
> how he might best continue his criminal activity while minimizing his risk of
> future punishment.

*Id*.   The Court then greatly understated that such a holding would "represent unattractive

public policy".   *Id*.

   Mr. Faison makes no such argument here.   He has not committed any new or

subsequent federal crime.   His federal charges existed *in toto* when he pled guilty in

January, 2015.   At that point, his federal exposure was burgeoning and thriving; nothing

more was needed than for a federal grand jury to hear of the guilty pleas to sign off on a

new racketeering indictment.   To admit his State guilty pleas, particularly in light of

their conclusive nature at a federal trial, absent contemporaneous advice of the then

extant threat of federal incarceration violates the United States Constitution, Supreme

Court case law, Rule 402 and is, on balance, unfair to the defendant.

   WHEREFORE, defendant Kenneth Faison moves this Honorable Court to exclude

from evidence introduction of his guilty pleas in State court from 2015 in the

Government's case-in-chief..

                              Respectfully submitted,

                              _____/s/_____
                              Richard Bardos
                              Schulman, Hershfield & Gilden, P.A.
                              1 East Pratt Street, 9th Floor
                              Baltimore, Maryland 21202
                              (410) 332 0850

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this    1st    of August, 2017, a copy of the foregoing Memorandum was served electronically via ECF to: Office of the United States Attorney, 36 South Charles Street, Fourth Floor, Baltimore, Maryland 21201 and all defense counsel.

_____/s/_____
Richard Bardos