IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

STATE OF MARYLAND,

     vs.                    Case No.: 113310024

KENNETH FAISON,

       Defendant,

and

HENRY LEE WALKER,             Case No.: 113310053

       Co-Defendant.

_____/

OFFICIAL TRANSCRIPT OF PROCEEDINGS
(HEARING)

Baltimore, Maryland

Tuesday, January 13, 2015

BEFORE:

    HONORABLE EMMANUEL BROWN, ASSOCIATE JUDGE

APPEARANCES:

    For the State:

        DANA MIDDLETON, ESQUIRE

    For the Defendant Faison:

        DERRICK G. HAMLIN, ESQUIRE

    For the Defendant Walker:

        RICHARD MILLER, ESQUIRE

Electronic Proceedings Transcribed by:  Wendy S. Sardina

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

# C O N T E N T S

|  | P a g e |
|---|---|
| RECORD OF PROCEEDINGS | H-3 |
| QUALIFICATION AND RIGHTS | H-13 |
| FAISON STATEMENT OF FACTS | H-31 |
| COURT'S FINDINGS | H-38 |
| COURT'S VERDICT | H-39 |
| COURT'S SENTENCE | H-40 |
| POST-TRIAL RIGHTS | H-42 |

-o0o-

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

01/13/15        H-3

P R O C E E D I N G S

(4:19 p.m.)

1
2
3      MS. MIDDLETON:  Thank you, Your Honor.  I recall

4  the matter State of Maryland v. Kenneth Faison, Case No.

5  113310024.

6      MR. HAMLIN:  Derrick Hamlin on behalf of Mr.

7  Kenneth Faison standing to my immediate right.

8      MS. MIDDLETON:  Your Honor, it's the State's

9  understanding that the State has offered Mr. Faison a plea

10  --

11      THE COURT:  Well, let me ask this question.  Have

12  you worked out your differences?

13      MR. HAMLIN:  Yes, Your Honor.

14      THE COURT:  And how has that worked out?

15      MS. MIDDLETON:  I believe we're still -- he's

16  still willing to take the State's offer, Your Honor.

17      THE COURT:  I'm sorry?

18      MS. MIDDLETON:  I think that he's still willing to

19  take the State's or accept the State's offer.

20      THE COURT:  Approach please.  Approach.

21      (Counsel approached the bench, and the following

22  occurred:)

23      MS. MIDDLETON:  Your Honor, are you referring to

24  --

25      THE COURT:  Is this an Alford plea or not?

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

01/13/15        H-4

1

2          MR. HAMLIN:  No, it's not going to be an Alford

3    plea.

4          THE COURT:  All right.

5          MR. HAMLIN:  Are you referring to the --

6          MS. MIDDLETON:  So we discussed --

7          MR. HAMLIN:  -- part about whether or not he has

8    to call his probation officer every time he sees his

9    brother, even if he's living in the same house with him at

10   some point?

11         THE COURT:  I'm referring to every issue that you

12   all had when you came up here.  Have you worked them out?

13         MR. HAMLIN:  I'm not sure if that's --

14         THE COURT:  You've already said one.

15         MR. HAMLIN:  -- a issue.  Is that a issue that you

16   all are requiring that he stay away from his brother?

17         MS. MIDDLETON:  What the State said, because Mr.

18   Ruther was not here, so don't even say anything, Mr. -- what

19   the State said was that the State would not be opposed to

20   making a limited exemption should Mr. --

21         MR. HAMLIN:  Faison.

22         MS. MIDDLETON:  -- Johnson --

23         THE COURT:  I'm sorry, one person at a time.

24         MS. MIDDLETON:  -- should Mr. Johnson return home

25   and they have to live together.  I believe that --

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

01/13/15        H-5

1          MR. HAMLIN:  Okay.

2          MS. MIDDLETON:  -- the reason that was the -- an

3     issue is because they're not -- as of now both Mr. Gerald

4     Johnson and Mr. Faison are incarcerated.  There is a chance,

5     however, that should Mr. Gerald Johnson be released, he and

6     Mr. Faison need to reside together.  He and Mr. Faison are

7     brothers, so that would be a stringent condition.

8          THE COURT:  Are you explaining it to him or are

9     you explaining to me?

10         MS. MIDDLETON:  Both.

11         THE COURT:  Oh, well, no, I heard all of it

12    before.  You can explain it to him later.

13         MS. MIDDLETON:  Thank you.  So --

14         THE COURT:  My issue is -- my concern is have you

15    worked it out?

16         MS. MIDDLETON:  It's the State's -- we have.  And,

17    yes, I'll just say yes.

18         THE COURT:  All right.  Give me the nutshell

19    version of your agreement.

20         MS. MIDDLETON:  I haven't seen that.  Thank you.

21         THE COURT:  Of that part of your agreement.  I

22    don't want to go through everything else.

23         MS. MIDDLETON:  That in this case in addition to

24    the plea the State has asked that Mr. Faison stay away with

25    known members of the Black Guerilla Family.  Mr. Johnson is

01/13/15        H-6

1   a member of the Black Guerilla Family.  And the State -- but

2   the State has agreed to put a limited condition on that

3   contact order, because the State -- on the no contact order

4   because the State has been made aware that they are brothers

5   and there is a possibility that they may reside together.

6   So the State is willing to make a limited exemption for that

7   case should that be the case.

8          THE COURT:  You mean reside together in the

9   mother's home.

10         MS. MIDDLETON:  Yes.  Reside together in the

11  mother's home.  I apologize, Your Honor.

12         THE COURT:  Okay.

13         MS. MIDDLETON:  The other matter that was at issue

14  was whether or not Mr. Faison was willing to take -- or

15  wanted to take an Alford plea.  The State's understanding he

16  does not want to take an Alford plea.  But that was -- the

17  State was objecting to that understanding that the Court

18  does have the discretion in that matter.

19         THE COURT:  All right.  Would --

20         MR. HAMLIN:  Ultimately it is the Court's decision

21  and not the State's.  And if the Court requires that he take

22  a regular plea, I explained it to him and he said

23  essentially that he will say what the State requires to

24  accept the plea.

25         THE COURT:  All right.  What I'm going to do is

1    I'm going to modify the exemption to the point that if there

2    is some need for the two to live together in the same home

3    while they're both on probation, then you'll file a motion

4    to come back in so we can discuss it and address it.   That

5    way there won't be any mistakes.   All right?

6              MS. MIDDLETON:   Yes, Your Honor.

7              MR. HAMLIN:   So just for my understanding that

8    means he's not allowed to go visit his brother in prison if

9    his brother gets life in prison, or whatever?

10             THE COURT:   Well, the limit -- I'm modifying the

11   limited contact.   Now, in terms of if they don't live

12   together he's under the condition that the State talked

13   about.   If he -- if they have to live together, that opens

14   up a whole other can of worms and I want to address it.

15             MR. HAMLIN:   I'll talk to him about it, Your

16   Honor.   I haven't discussed that with him.   Because he was

17   under the impression that he could talk to his brother as

18   long as -- and our objection was that he should not --

19             THE COURT:   I'm not changing --

20             MR. HAMLIN:   -- be required --

21             THE COURT:   -- that part.   I'm not changing --

22             MR. HAMLIN:   Okay.

23             THE COURT:   -- the part that he can talk to his

24   brother.   He has to notify the agent, I believe that's what

25   you said, right?

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

01/13/15          H-8

1          MR. HAMLIN:  Right.

2          MS. MIDDLETON:  Uh-huh.  Yeah.

3          THE COURT:  The issue is what happens if they live

4     together.

5          MR. HAMLIN:  Okay.

6          THE COURT:  If they have to live together.

7          MR. HAMLIN:  Okay.

8          THE COURT:  And if that's an issue, then we will

9     come in and talk about it.  At this point I'm not giving him

10    permission to live with this brother, although he may have

11    some contact with him in connection with the probation

12    agent's knowledge.  But in terms of living together, I want

13    it to come back.  And then you can explain why that is the

14    case.  I mean, for all we know he might be off probation

15    before his brother gets out.  I don't know what's going to

16    happen.

17          MR. HAMLIN:  Right.

18          THE COURT:  So this might be a moot issue.  But I

19    don't know if moot is a good word these days, but we'll see

20    how that works out whether he can speak to him.  And I'm not

21    saying that I won't let them live together, but I don't want

22    to create a situation that will cause him to fail, when it's

23    so easy to come back in here and address it.

24          MR. HAMLIN:  All right.  And I don't anticipate

25    his brother being out anytime soon.  Like --

01/13/15          H-9

1          THE COURT:  Well, he may --

2          MR. HAMLIN:  -- the State's Attorney said.  But --

3          THE COURT:  He may beat him out.

4          MR. HAMLIN:  I guess the, yeah, the problem is if

5    he beats him out and then he gets paroled at some point, we

6    don't have time to file a motion and he may have nowhere to

7    go.

8          THE COURT:  Well, if that --

9          MR. HAMLIN:  Well, all right, we can --

10         THE COURT:  If that's the --

11         MR. HAMLIN:  I'll talk to him.

12         THE COURT:  If that's the issue, I'm sure that you

13   being the advocate you are will explain to this Court in a

14   way that this Court can understand that he had no choice.

15   But otherwise I expect a motion.  And if he knows he's

16   getting out, he should give you a head up I have no place to

17   go.  So I mean, I don't know how much notice they get when

18   they're going to be released.  But if they get some notice,

19   then that would be a good time to address it.

20         MR. HAMLIN:  Okay.

21         THE COURT:  And we'll just wait until he gets on

22   the street.  Okay?

23         MR. HAMLIN:  All right.

24         THE COURT:  Talk to him.

25         MR. MILLER:  Thank you, Your Honor.

1           MR. HAMLIN:  All right.

2           (Counsel returned to the trial tables, and the

3    following occurred in open court:)

4           THE COURT:  Any other short matters?

5           (Recess from 4:27 p.m. until 4:32 p.m.)

6           THE COURT:  All right.  And do we have an

7    agreement on Mr. Faison?  Is it Faison or --

8           MR. HAMLIN:  Faison.

9           THE COURT:  Faison.  All right.  Do we have an

10   agreement?

11          MR. HAMLIN:  Yes, Your Honor.

12          THE COURT:  All right.  And that was already

13   called, right?

14          MS. MIDDLETON:  Yes, Your Honor.

15          THE COURT:  Okay.  Madam Clerk, would you --

16          THE CLERK:  What count is that?  What was called?

17          THE COURT:  Okay.

18          MS. MIDDLETON:  Your Honor --

19          THE COURT:  Counts II, III and V; is that correct?

20          MS. MIDDLETON:  Yes, Your Honor.

21          THE COURT:  And he's going to -- well, Count II I

22   guess that would have to be ten years, suspend all but five;

23   is that right?  The maximum penalty is three -- I mean is

24   ten?

25          MS. MIDDLETON:  Yes, Your Honor.

1          THE COURT:  All right.  Counts III and V is twelve

2     years, suspend all but five.  And they're all concurrent?

3          THE CLERK:  How much probation?

4          MR. HAMLIN:  That's correct.

5          THE COURT:  Three years' supervised probation.

6     Drug, alcohol screening and treatment, random urine

7     analysis.  He does not have his GED?

8          MR. HAMLIN:  That's my understanding, Your Honor.

9          THE COURT:  YOu will get your GED.  Well, enroll

10    in the GED program within 60 days.  You will stay in the

11    program, take the test over and over again, attend on a

12    regular basis.  You can't get kicked out.  I will not put

13    you in jail for failing the test, but I will put you in jail

14    if you quit.  I think if you stay in the program, attend on

15    a regular basis and take the test, you'll pass it.  But if

16    you quit, you're not giving yourself a chance and that will

17    be a violation.  In addition, he is to stay away from BGF

18    members as listed.  There's a limited exception with Gerard

19    Johnson.

20          MS. MIDDLETON:  Gerald Johnson, Your Honor.

21          THE COURT:  I'm sorry, Gerald?

22          MS. MIDDLETON:  Yes, Your Honor.

23          THE COURT:  Gerald Johnson.  That limited

24    exception is you must contact your agent about -- I'm sorry,

25    I need him to pay attention to me right now -- contact your

01/13/15          H-12

1   agent regarding contact with Mr. Johnson.  If it turns out

2   that you may have to live with him at your mother's home,

3   then before you are released, you're to contact your

4   attorney if that's your only option or if that's his only

5   option.  You will contact your attorney, he will file a

6   motion and we will address that so that won't be some

7   automatic violation.  Understood?

8              DEFENDANT FAISON:  Yes, sir.

9              THE COURT:  All right.  All right, I need you to

10  stand up at this -- Madam Clerk, did you get everything?

11             THE CLERK:  I did, Your Honor.

12             THE COURT:  All right.

13             MR. HAMLIN:  Your Honor, just for the record,

14  parties agree that this will be dated from 12/19/2012.  I

15  mean 20, yeah, 2012.

16             THE COURT:  This -- what will be dated?

17             MR. HAMLIN:  Sentencing.  I mean his I guess

18  credit, jail credit from 12/19/12.

19             MS. MIDDLETON:  Your Honor, there's no objection.

20             THE COURT:  All right, Madam Clerk.

21             THE CLERK:  Yes.  I need each of you to please

22  raise your right hand the best you can.

23             (Defendants sworn.)

24             THE CLERK:  You may now lower your hands.  Mr.

25  Faison, state your name.

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

01/13/15       H-13

1        DEFENDANT FAISON:  Kenneth Lee Faison.

2        THE CLERK:  Your address.

3        DEFENDANT FAISON:  736 North Linwood Avenue.

4        THE CLERK:  House or apartment?

5        DEFENDANT FAISON:  House.

6        THE CLERK:  And that zip code?

7        DEFENDANT FAISON:  21205.

8        THE CLERK:  Not 21212?

9        DEFENDANT FAISON:  21205.

10       THE CLERK:  You said North Glenwood.

11       DEFENDANT FAISON:  North Linwood Avenue.

12       THE CLERK:  Okay.  Date of birth?

13       DEFENDANT FAISON:  08/13/1989.

14       THE CLERK:  And your age as of today?

15       DEFENDANT FAISON:  Twenty-five.

16       THE CLERK:  Thank you.

17       Mr. Walker, please state your name.

18       DEFENDANT WALKER:  Henry Alan Walker, Jr.

19       THE CLERK:  Your address?

20       DEFENDANT WALKER:  949 North Merrill Street.

21       THE CLERK:  House or apartment?

22       DEFENDANT WALKER:  Apartment.

23       THE CLERK:  And that apartment number?

24       DEFENDANT WALKER:  B.

25       THE CLERK:  Zip code?

01/13/15        H-14

1        DEFENDANT WALKER:  21217.

2        THE CLERK:  Your date of birth?

3        DEFENDANT WALKER:  12/01/73.

4        THE CLERK:  And your age as of today?

5        DEFENDANT WALKER:  Forty-one.

6        THE CLERK:  Thank you.

7        THE COURT:  All right, listen carefully.  One

8  moment.  Let me know when you're ready.

9        MR. HAMLIN:  We're ready, Your Honor.

10        THE COURT:  Listen carefully.  Counsel's going to

11  advise you of the rights you give up when you enter into a

12  guilty plea.  Do not answer until you are sure you

13  understand the questions and statements, because once you

14  answer I'm going to bind you.  So make sure you understand.

15  If you don't understand, say I don't understand and there

16  will be further explanations.  Make sure you keep your voice

17  up.

18        Counsel, use the State Attorney's microphone.  So

19  and let's readjust the microphones in front of the -- no.

20  Move it over a little bit.  The -- well, there's a little

21  more cord than there used to be.  You can pick it up and

22  just move it.  Well, you can do it that way too.  But I want

23  the microphone so it's centered so that both voices are

24  being picked up.  All right, thank you.  All right, who's --

25  are you going to do it, sir?

1          MR. MILLER:  I can do it, Judge.

2          THE COURT:  All right, please do.

3          MR. MILLER:  All right.  Mr. Walker and Mr.

4  Faison, I'm going to be advising you that by entering into

5  your respective guilty pleas this afternoon that you are

6  giving up or waiving certain constitutional protective trial

7  rights that you have.  And I'm going to address both of you.

8  But if you have any questions along the way, feel free to

9  ask either myself or Mr. Faison your counselor or the Court.

10  Okay.

11          DEFENDANT FAISON:  Okay.

12          MR. MILLER:  All right.  So, gentlemen, understand

13  that you have an absolute right in your respective cases to

14  enter a not guilty plea and to force the State to prove its

15  case against you beyond a reasonable doubt.  Mr. Walker, do

16  you understand that?

17          DEFENDANT WALKER:  Yes.

18          MR. MILLER:  And Mr. Faison, do you understand

19  that?

20          DEFENDANT FAISON:  Yes, sir.

21          MR. MILLER:  Okay.  Now, if you proceeded to trial

22  you have certain trial rights that are available to you and

23  actually two kinds of trials.  So let me first explain to

24  you the kinds of trials that are applicable and available to

25  both of you.  You have a right to a court trial.  And a

01/13/15          H-16

1    court trial means that it's a judge sitting alone without a

2    jury and the judge hears all the evidence of the case and

3    only if the court is satisfied of guilt beyond a reasonable

4    doubt, only then would a court find you guilty.  That is

5    called a court trial.  Mr. Walker, do you understand that?

6              DEFENDANT WALKER:  Yes.

7              MR. MILLER:  And Mr. Faison, do you understand

8    that?

9              DEFENDANT FAISON:  Yes, sir.

10             MR. MILLER:  And you also have a right to another

11   kind of trial, that's called a trial by jury.  A jury trial

12   is 12 people selected at random from the voter and motor

13   rolls of this community.  Each of your respective counsels

14   would assist in the selection of those jurors.  Those jurors

15   would sit in a jury box very similar to the one in the

16   courtroom here today.  The jury would hear all the facts in

17   the case from both Defense and the State.  And only if the

18   jury were satisfied of guilt beyond a reasonable doubt

19   unanimously, only then would a jury find you guilty.  That

20   is called a trial by jury.  Anything less than a unanimous

21   verdict by the jury is called a hung jury and the State

22   could, at its election should that occur, retry you until

23   there's some finality, either guilt or innocence.  Do you

24   understand that, Mr. Walker?

25             DEFENDANT WALKER:  Yes.

HUNT REPORTING COMPANY
Court Reporting and Litigation Support
Serving Maryland, Washington, and Virginia
410-766-HUNT (4868)
1-800-950-DEPO (3376)

01/13/15          H-17

1              MR. MILLER:  And Mr. Faison?

2         DEFENDANT FAISON:  Yes, sir.

3              MR. MILLER:  Okay.  Now applicable to both these

4    kinds of trials are certain specific trial rights that

5    you're giving up by pleading guilty.  If you went to trial

6    you would have a right to testify on your own behalf subject

7    to cross examination by the State's Attorney, questions by

8    the Court.  You're giving up the right to testify.  Do you

9    understand that?  Mr. Walker?

10         DEFENDANT WALKER:  Yes, sir.

11              MR. MILLER:  And Mr. Faison?

12         DEFENDANT FAISON:  Yes, sir.

13              MR. MILLER:  You also have a right at trial to

14   remain silent.  And if you remain silent no inference would

15   be drawn from that decision by a court in a court trial and

16   if it were a trial by jury, the trial judge in a jury trial

17   setting would ensure that the jury would not infer guilt

18   from a decision to remain silent.  And you are giving up

19   that right as well.  Do you understand that, Mr. Walker?

20         DEFENDANT WALKER:  Yes.

21              MR. MILLER:  And Mr. Faison?

22         DEFENDANT FAISON:  Yes, sir.

23              MR. MILLER:  Also at trial you're giving up the

24   right to have through your respective counsels the right of

25   cross-examination.  And that could be with -- that could be

01/13/15      H-18

1  cross-examination of other police officers, lay witnesses
2  and we're giving up the right of cross-examination.  Do you
3  understand that, Mr. Walker?
4           DEFENDANT WALKER:  Yes.
5           MR. MILLER:  And Mr. Faison.
6           DEFENDANT FAISON:  Yes, sir.
7           MR. MILLER:  Also with trial you're giving up the
8  right to offer up any defenses that might be available to
9  you.  They could be legal defenses like evidence was seized
10  in violation of the Fourth Amendment or factual defenses
11  that either of you gentlemen were actually not the person
12  that the State has alleged to have committed these
13  respective offenses and we're giving up those rights as
14  well, that is legal and factual defenses.  Mr. Walker, do
15  you understand that?
16           DEFENDANT WALKER:  Yes.
17           MR. MILLER:  And Mr. Faison, do you understand
18  that?
19           DEFENDANT FAISON:  Yes, sir.
20           MR. MILLER:  You're also giving up the right to
21  bring into the courtroom any defense witnesses to testify
22  for either of you gentlemen should there have been any.  And
23  the State and the court would enforce that request by your
24  respective counsel should there have been any witnesses to
25  bring those people in by way of subpoena power and we're

01/13/15        H-19

1   giving up those rights as well.  Do you understand that?

2              DEFENDANT FAISON:  Yes, sir.

3              DEFENDANT WALKER:  Yes.

4              MR. MILLER:  Okay.  All right.  Understand, and

5   I'm skipping a little bit ahead of myself now, but this is a

6   part of what we need to explain, understand that this Court

7   has no control over any immigration consequences should

8   either of you gentlemen not be a U.S. citizen.  We believe

9   that you are.  But should that be a mistaken fact,

10  understand that this proceeding could well impact

11  immigration up through and including something as serious as

12  deportation from the United States.  Do you understand that,

13  Mr. Walker?

14             DEFENDANT WALKER:  Yes.

15             MR. MILLER:  And Mr. Faison?

16             DEFENDANT FAISON:  Yes, sir.

17             MR. MILLER:  Understand also that this proceeding

18  in this court has no control over any other probations or

19  paroles that you might currently be in in terms of impacting

20  them, should there be any.  Understand that, Mr. Walker?

21             DEFENDANT WALKER:  Yes.

22             MR. MILLER:  And Mr. Faison?

23             DEFENDANT FAISON:  Yes, sir.

24             MR. MILLER:  Now, before I get into your limited

25  rights of appeal, Mr. Walker, let me first start with you.

01/13/15          H-20

1    We are entering -- tendering a guilty plea to Counts II and

2    III of the indictment.   Count III charge is possession with

3    intent to distribute heroin.   That means that you were in

4    sufficient quantity of that drug to indicate not personal

5    use but distribution.   And it carries theoretically 20 years

6    of incarceration.   And then Count II is a criminal gang

7    count that carries ten years.   And that essentially means

8    participation in some level and some activity in gang-

9    related activity.   Do you understand that those are the two

10   counts that you are pleading guilty to, Mr. Walker?

11              DEFENDANT WALKER:   Yes.

12              MR. MILLER:   Yes?   And Mr. Faison, as to you, sir,

13   you are entering a guilty plea to Counts II, III and V.

14   Count II in your criminal charging document is the criminal

15   gang count that I just explained to Mr. Walker.   Count III

16   is assault, and assault -- excuse me, assault in Count III

17   and assault in Count V.   Do you understand that?

18              DEFENDANT FAISON:   Yes, sir.

19              MR. MILLER:   Now, the statutory penalties, Mr.

20   Faison, for you as to the criminal gang count are ten years.

21   And you're going to be receiving ten years, suspend all but

22   five.   The assault is twelve years, suspend all but five.

23   And Count V assault three years, suspend --

24              MR. HAMLIN:   Twelve years.

25              MR. MILLER:   I'm sorry, twelve years, suspend all

01/13/15        H-21

1    but five as well.  But all those sentences are to run

2    concurrent, followed by three years of supervised probation.

3    Do you understand that?

4              DEFENDANT FAISON:  Yes, sir.

5              MR. MILLER:  And, Mr. Walker, your sentence, what

6    we have agreed upon, is a ten-year sentence, suspend all but

7    four years, followed by three years of supervised probation.

8    Do you understand that?

9              DEFENDANT WALKER:  Yes.

10             MR. MILLER:  That's what we discussed and that's

11   what the sentence will be, subject to some other conditions

12   that we'll go over with you or the Court will go over with

13   you, already has in terms of the specific, to stay away from

14   gang-related activity and GED requirements, et cetera.

15             Now, if you gentlemen were to have proceeded to

16   trial and would have lost, you would have an automatic right

17   to an appeal to Maryland's next highest court, which is the

18   Court of Special Appeals.  But by proceeding with a guilty

19   plea, you are narrowly restricting your right to mount an

20   appeal in a very restricted way, it's called an application

21   for leave to appeal to Maryland's next highest court.  And

22   it's based upon four specific grounds, which I will go over

23   with you.  Okay?

24             The first ground has to do with jurisdiction, and

25   that is whether both of you gentlemen were over the age of

01/13/15          H-22

1    18 and whether these events are alleged to have occurred and

2    did occur in Baltimore City.  Do you understand that, Mr.

3    Walker?

4              DEFENDANT WALKER:  Yes.

5              MR. MILLER:  And Mr. Faison?

6              DEFENDANT FAISON:  Yes, sir.

7              MR. MILLER:  Since both of you gentlemen are in

8    fact over 18 and because these events are alleged to have

9    occurred in Baltimore, in all likelihood the ground of

10   jurisdiction would not prevail in this limited right of

11   appeal that you have.  Do you understand, Mr. Walker?

12             DEFENDANT WALKER:  Yes.

13             MR. MILLER:  And Mr. Faison?

14             DEFENDANT FAISON:  Yes, sir.

15             MR. MILLER:  All right.  The second ground would

16   be the legality of the sentence.  Now, Mr. Walker, you are

17   my client, and we've discussed this before.  The statutory

18   exposure that you have in your two respective counts are

19   twenty years on the possession count, that's Count III, and

20   ten on the criminal gang count.  Clearly the sentence of ten

21   years, suspend all but four, followed by three years of

22   supervised probation would be viewed as a lawful sentence.

23   Do you understand that, Mr. Walker?

24             DEFENDANT WALKER:  Yes.

25             MR. MILLER:  And because of that, as to you